The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

John Otis TURNER, Defendant-Appellee.

No. 82SA554.

Supreme Court of Colorado,
En Banc.

March 28, 1983.

Paul Q. Beacom, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for plaintiff-appellant.

Richard B. Deutsch, Denver, for defendant-appellee.

NEIGHBORS, Justice.

This is an interlocutory appeal of the trial court's ruling suppressing evidence seized pursuant to a search warrant. We affirm in part and reverse in part the order of suppression.

During the month of February 1981, police officers in the Lakewood Department of Public Safety received information from a "previously reliable source" that a number of persons, including the defendant, were involved in illegally manufacturing, selling, and distributing methamphetamine. On March 17, 1982, more than one year later, Agent Albert Keller from the Lakewood Department of Public Safety drove past the defendant's residence located at 2264 Elmira Street in Aurora, Colorado. Agent Keller observed the defendant standing outside his residence in the company of a person known to him as Oral Ray VanHook, III. Agent Keller knew both the defendant and VanHook from prior police contacts involving illegal drug activities. For reasons that are unclear from the rec-

ord, surveillance of the defendant's residence began sometime prior to 9:00 p.m. on March 17, 1982. Special Agent Patrick Fagan of the Drug Enforcement Administration was one of the officers assigned to assist in the surveillance of the defendant's house.

At approximately 9:00 p.m., Agent Keller was awakened at home. He was asked to begin drafting an affidavit in support of a request for a search warrant. Agent Keller went to a sub-office used by the Lakewood Department of Public Safety located at 1605 Yarrow Street in Lakewood, Colorado where he arrived at approximately 9:20 p.m.

Agents Fagan and Keller were informed by surveillance officers that numerous persons and vehicles were observed coming and going from the Elmira Street residence. The officers believed that the unusual level of activity was consistent with drug dealing. Agent Fagan recognized one of the vehicles parked in front of the residence as belonging to Michael Allison. Fagan was familiar with Allison as a "known and convicted methamphetamine trafficker."

At approximately 9:50 p.m., Agent Fagan walked down the alley behind the Elmira Street house. As he walked past the unattached two-story garage located to the rear of the Elmira Street residence, he smelled a very distinct odor, which he associated with the manufacture of methamphetamine, emanating from the garage. He saw that one of the windows was encased in plastic. From his training and experience, Agent Fagan knew that plastic is placed in windows to prevent the odors associated with the manufacture of methamphetamine from escaping. Agent Fagan relayed this information to Agent Keller.

At approximately 10:00 p.m., Allison left the residence in his vehicle. The police made the decision to arrest Allison because they believed that a methamphetamine laboratory was located in the garage and that Allison may have been removing evidence or contraband from the premises. Uniformed officers from the Aurora Police Department stopped Allison several blocks from the Elmira Street location, after he was out of the sight of persons present in the house. Allison and his vehicle were searched by the police who found no evidence of illegal drug activity. However, Allison was arrested on a warrant issued by the Aurora Municipal Court for failure to appear on a traffic charge. The officers believed that no one in the Elmira Street house had observed either the arrest of Allison or the ongoing surveillance.

After Allison was arrested, Agents Keller and Fagan and other officers decided that the surveillance officers should enter the house and the garage and secure the premises until Agent Keller could complete the affidavit and obtain the search warrant. The officers testified that the only reason they entered the garage and the house was because they feared that if Allison did not return, the occupants of the house might be alerted to Allison's arrest and then remove evidence from the house and garage.

The officers entered the house and garage shortly after 10:00 p.m. They arrested the occupants, including the defendant who was in the garage. According to statements made by respective counsel during their arguments on the motion to suppress evidence, drugs and money were seized from the defendant's pockets incident to his arrest.

In order to insure that no one was on the second floor of the garage, Special Agent Dick Barter from the Drug Enforcement Administration climbed a ladder up to that floor. He observed glassware, laboratory equipment, and chemicals which he knew were used in the manufacture of methamphetamine.

Agent Keller completed the affidavit and took it to a judge who issued the search warrant shortly after midnight. At approximately 1:00 a.m., the officers searched the house and garage at 2264 Elmira Street and seized items as evidence.

The defendant filed a motion to suppress the evidence. At the conclusion of the hearing held on November 10, 1982, the trial court denied the motion, finding that

there were exigent circumstances justifying the warrantless entry into the house and that the affidavit established probable cause to support the search warrant which was issued. However, the trial judge reversed his earlier ruling on November 12, 1982, and entered a written order granting the defendant's motion to suppress all the evidence seized from the Elmira Street property. The court found there were no exigent circumstances justifying the warrantless entry by the police into the house or the garage. It is from this order of suppression that the People have appealed.

## I.

There are two searches involved in this case. The first search occurred on March 17, 1982, when the police entered the house and garage without a warrant to secure both premises until a search warrant could be obtained. The second search of the house and garage occurred on March 18, 1982, when the police searched the premises pursuant to a search warrant.

A warrantless search is presumed to violate the constitutional provisions forbidding unreasonable searches.[1] *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977). The burden of proof is always upon the People to establish that the search falls within the limits of a well-recognized exception to the warrant requirement. *People v. Williams*, 200 Colo. 187, 613 P.2d 879 (1980). Exigent circumstances necessitating immediate police action justify warrantless searches and seizures. *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *People v. Barndt*, 199 Colo. 51, 604 P.2d 1173 (1980). Absent exigent circumstances, an arrest in a suspect's home must be pursuant to an arrest warrant. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *McCall v. People*, 623 P.2d 397 (Colo.1981); *People v. Williams, supra.* The prosecution must establish the existence of both probable cause and exigent circumstances to justify a warrantless entry, ar-

rest, and search. *People v. Bustam*, 641 P.2d 968 (Colo.1982).

## A.

It is undisputed that the police entered the residence and garage located at 2264 Elmira Street without a warrant and arrested and searched the defendant. The first issue presented is whether there was probable cause to believe that a crime was occurring on the premises. In *People v. Thompson*, 185 Colo. 208, 523 P.2d 128 (1974), we stated:

> "An officer has probable cause when the facts and circumstances within his knowledge—or upon which he has reasonably trustworthy information—are sufficient to warrant a reasonably prudent man in believing that the person to be searched or arrested has committed or is committing an offense."

185 Colo. at 212, 523 P.2d 128. In applying the test to the facts in this case, we agree with the finding of the trial court that probable cause existed to believe that crimes were being committed in the residence and in the garage. The facts which establish probable cause are these: (1) the presence of persons known to the police to be involved in methamphetamine traffic; (2) the unusual number of persons seen coming and going from the residence; (3) the presence of an odor associated with the manufacture of methamphetamine emanating from the garage; and (4) the presence of plastic around the window to prevent the odor from escaping.

The trial court found that no exigent circumstances existed justifying the warrantless entry. We agree.

The threat of immediate destruction or removal of evidence is an exigent circumstance justifying a warrantless search. *People v. Bustam, supra; People v. Gomez*, 632 P.2d 586 (Colo.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982); *McCall v. People, supra.* However, the People must demonstrate an

---

1. *U.S. Const.* amend. IV; *Colo. Const.* art. II, sec. 7.

articulable basis on the part of the police to justify a reasonable belief that evidence is about to be removed or destroyed. *United States v. McLaughlin,* 525 F.2d 517 (9th Cir.1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976); *State v. Dorson,* 62 Hawaii 377, 615 P.2d 740 (1980). To justify a warrantless entry and seizure on the basis of destruction of evidence, the perceived danger must be real and immediate. The question is whether there is a real or substantial likelihood that the contraband or known evidence on the premises might be removed or destroyed before a warrant could be obtained. The mere fact that the evidence is of a type that is easily destroyed, does not, in and of itself, constitute an exigent circumstance. *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

■ The People contend that this case is controlled by our decision in *People v. Bustam, supra.* We disagree. The facts in this case are distinguishable. In *Bustam,* a drug buyer was overheard by the police to say that he would return promptly to the defendant's apartment. The drug buyer was arrested. In this case there is nothing but the vaguest suspicion by the officers that Allison's failure to return to the Elmira Street residence would alert the defendant to Allison's arrest and result in the removal or destruction of evidence. Nor does this case involve the situation where the defendant and his confederates observed the police watching them engage in criminal conduct. *People v. Gomez, supra.* Accordingly, we decline to extend the *Bustam* rationale to this case. We, therefore, conclude that the warrantless entry by the police into the defendant's residence and garage when no exigent circumstances existed constituted an unreasonable search in violation of the defendant's constitutional rights under the United States and Colorado Constitutions.

2. The body of the affidavit appears as Appendix A to this opinion.

### B.

Although the testimony does not clearly establish that the defendant was searched incident to his arrest following the warrantless entry by the police into the garage, the arguments of counsel indicate such was the case. It is, therefore, necessary to resolve the issue in this appeal.

■ No extensive discussion is required. The police officers were unlawfully in the garage when they arrested the defendant because no exigent circumstances were present. The defendant was illegally arrested. Therefore, any evidence seized from him must be suppressed. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

### II.

■ We now turn to a discussion of the issues raised by the search of the defendant's house and garage pursuant to the search warrant. In analyzing a case in which there was an initial illegal search by the police followed by a search pursuant to a warrant, the court must determine whether the second search was tainted by the illegality of the first search. If there is clear and convincing evidence that the second search was conducted pursuant to a warrant based on information obtained before the illegal warrantless search, then the evidence would have been derived from a source independent of the initial illegality and should not be suppressed. *E.g. United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Barndt, supra; People v. Hannah,* 183 Colo. 9, 514 P.2d 320 (1973). Therefore, we are required to determine whether the sufficiency of the affidavit [2] submitted in support of the request for the warrant which authorized the search of the defendant's house and garage clearly and convincingly establishes an independent basis for the second search.[3]

3. This case does not involve an initial "pretext" entry or search. Nor has the defendant made such an argument. The police entered the

The parties agree that paragraph 1 of the affidavit does not meet the requirements of either prong of the *Aguilar*[4]-*Spinelli*[5] test because the reliable source is not identified. First, the alleged facts which caused the informant to conclude that criminal activity was taking place are not set forth in the affidavit. Second, the facts stated in the affidavit do not establish that the informant is reliable. The mere assertion of reliability is insufficient. *People v. Aragon,* 187 Colo. 206, 529 P.2d 644 (1974). At the hearing on the motion to suppress evidence, Agent Keller identified the informant as Susan Sutton. However, the sufficiency of the affidavit must be determined from its four corners. *Spinelli v. United States, supra; People v. Padilla,* 182 Colo. 101, 511 P.2d 480 (1973); *People v. Goggin,* 177 Colo. 19, 492 P.2d 618 (1972). The People may not supplement the contents of a warrant by presenting evidence at the hearing on the motion to suppress. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971). Therefore, paragraph 1 may not be considered in determining the sufficiency of the affidavit.

The first portion of paragraph 2 of the warrant is based on the police officer-affiant's personal observations. A common sense reading of the remainder of paragraph 2 leads a reasonable person to conclude that the information contained in the affidavit is taken from police records. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *People v. Lindholm,* 197 Colo. 270, 591 P.2d 1032 (1979); *People v. Whisenhunt,* 173 Colo. 109, 476 P.2d 997 (1970). While some of the information is inaccurate, it nonetheless establishes that two of the three named individuals are suspected by the police of being connected with illegal activity involving methamphetamine.

The source of the information contained in paragraphs 3 through 7 is not identified. At the hearing on the motion to suppress, Agent Keller testified that the information was provided to him by surveillance officers as he monitored their conversations on the evening of March 17, 1982. A common sense reading of those paragraphs clearly indicates that fellow officers provided the information to Agent Keller. *People v. Henry,* 631 P.2d 1122 (Colo.1981); *People v. Quintana,* 183 Colo. 81, 514 P.2d 1325 (1973).

A different problem is presented by the last sentence of paragraph 7. That information was obtained directly as a result of the first search which we have found to be in violation of the defendant's constitutional rights. Therefore, the last sentence of paragraph 7 may not be considered in determining the sufficiency of the affidavit.

The remaining statements in the affidavit contain the facts enumerated in Section I.A. of our opinion which we have determined rise to the level of probable cause. *See People v. Hampton,* 196 Colo. 466, 587 P.2d 275 (1978); *People v. Malone,* 175 Colo. 31, 485 P.2d 499 (1971). Therefore, the affidavit establishes probable cause for the second search.

One additional issue remains to be decided. The record does not contain the return and inventory of the items seized pursuant to the warrant. Nor is there any testimony as to what evidence was seized. Presumably, the glassware, laboratory equipment, and chemicals observed in plain view by Agent Barter were among the items seized. As required by our decision in *People v. Barndt, supra,* any evidence found in plain view during the initial illegal entry must be suppressed because the police were not lawfully and legitimately on the premises.[6] *Coolidge v. New Hampshire,* 403 U.S.

premises based on a colorable claim that exigent circumstances existed. A judicial determination that there were, in fact, no exigent circumstances does not *per se* taint a subsequent search and/or seizure conducted pursuant to a warrant.

**4.** *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**5.** *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**6.** The trial court will be required to hold a further evidentiary hearing to determine which items of evidence should be suppressed in accordance with this opinion.

443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *People v. Gurule,* 196 Colo. 562, 593 P.2d 319 (1978). However, evidence discovered for the first time during the search conducted pursuant to the warrant was properly obtained in compliance with constitutional requirements.

### III.

The order of suppression entered by the trial court is affirmed in part and reversed in part.

### APPENDIX A

"Agent Albert D. Keller, Lakewood Department of Public Safety

#### (Affiant)

being first duly sworn, upon his oath relates the following facts: *

#### [1]

During the month of February, 1981, your affiant received information from a previously reliable source who identified numerous persons involved in the illegal manufacture sales or distribution of methamphetamine, a controlled substance. Some of the persons identified are John Otis Turner, Oral Ray VanHook III and Michael Allison.

#### [2]

On March 17, 1982, at approximately 1300 hours, your affiant drove past the residence of John Otis Turner, 2264 Elmira Street, Aurora, Adams County, Colorado. Your affiant observed a subject recognized by your affiant as Oral Ray VanHook III. VanHook was standing in front of the residence with a subject recognized as John Turner. The following information is known about the aforementioned subjects:

1) Turner, John Otis
   DOB: 1–18–52
   FBI #: 639968K3
   Address: 2264 Elmira Street, Aurora, Colorado

SSN: 451–96–0900
Described as a white male, 5–10 tall, 160 pounds, brown hair and brown eyes
Criminal History: On February 23, 1978, Turner was arrested at his home, 2264 Elmira St. Aurora, Colorado by the Aurora Police Department. Turner was charged with manufacturing methamphetamine, a controlled substance. Turner has been arrested on two other occasions for drug violations.

2) VanHook, Oral Ray III
   DOB: 3–13–47
   FBI #: 706528N
   Address: Unknown
   Described as a white male, 6–1 tall, 200 pounds, brown hair, blue eyes
   Criminal History: Ray VanHook's arrest record dates back to December 18, 1970, when he was arrested for burglary and theft. His record consists of numerous thefts, assault with a deadly weapon, criminal extortion, felony menacing and escape from the Colorado State Penintentiary [sic].

   Additional: Ray VanHook is married to Linda Marie VanHook, DOB: 10–15–46. Linda VanHook has prior arrests for conspiracy and sale of methamphetamine. Ray VanHook was in the company of Linda VanHook during narcotic transactions.

3) Allison, Michael Arthur
   DOB: 9–11–53
   Address: 2325½ West Warren Avenue, Englewood, Colorado
   FBI #: 41956J2
   Described as a white male, 6–3 tall, 195 pounds, blond hair and blue eyes
   Criminal History: Allison has numerous arrests dating back to 1971. He has numerous prior charges of possession, use and sales of methamphetamine. On April 16, 1980, charges were filed in Arapahoe District Court against Mike Allison for manufacturing methamphetamine.

---

* Describe the property to be seized in specific detail. Describe the premises or vehicle to be seized in specific detail. Establish facts to show the property is seizable under Rule 41, and 16–3–301.

[3]

During the evening hours of March 17, 1982, Agents of the Lakewood Department of Public Safety and the United States Drug Enforcement Administration (DEA) established surveillance in the area of 2264 Elmira Street, Aurora, Colorado. The agents observed a 1979 Pick-up truck, white and green in color, displaying Colorado Recreational Truck license phates [sic] PH–3996, parked in front of the house. The Colorado Department of Revenue lists the above license plate to Michael A. Allison, 4700 South Kalamath Street, Englewood, Colorado.

[4]

At approximately 2130 hours, Special Agent Keith Clements of the Drug Enforcement Administration and Detective John Howe of the Aurora Police Department walked through the alley behind 2264 Elmira Street. The officers observed plastic covering the windows of a two story garage located behind the house. Special Agent Keith Clements smelled a strong chemical odor of methamphetamine. From your affiants [sic] prior training and experience and based on being a narcotics violations investigator for the past 4½ years, your affiant knows that covering windows with plastic is a method used by manufacturers of illegal methamphetamine to reduce the odors eminating [sic] from clandestine laboratories.

[5]

At approximately 2150 hours, Special Agent Patrick Fagan of the Drug Enforcement Administration walked through the alley behind 2264 Elmira Street. Agent Fagan has been working in the clandestine laboratory group out of the Denver, Colorado office of the Drug Enforcement Administration for approximately six years. Agent Fagan is a qualified expert witness in Federal District Court for the smell of methamphetamine during its manufacturing processes. Agent Fagan concurred with the suspicions of Special Agent Clements that in fact the odors being emitted from

the garage behind 2264 Elmira Street, were in fact methamphetamine in the process of being manufactured.

[6]

While the agents maintained surveillance on the residence, numerous vehicles arrived and departed. Occupants of those vehicles went into 2264 Elmira Street and departed the area. A volume of activity to and from a location coincides with established patterns for drug dealing.

[7]

At approximately 2200 hours, March 17, 1982, Lakewood Agent Bob Forrest observed Michael Allison leave the residence at 2264 Elmira Street and enter his 1979 Chevrolet truck. Agents of the Drug Enforcement Administration and officers of the Aurora Police Department initiated a stop on Allison's vehicle at East 25th avenue [sic] and Elmira Street. Michael Allison was detained as additional units secured the residence and occupants at 2264 Elmira Street pending issuance of a search warrant. Michael Allison and his vehicle returned to 2264 Elmira Street. While securing subjects at the house and detached garage, agents observed numerous items of laboratory equipment and glassware and chemicals consistent with the illegal manufacture of methamphetamine.

[8]

Your affiant respectfully requests the issuance of a search warrant for 2264 Elmira Street, City of Aurora, County of Adams, State of Colorado *AND* a 1979 Chevrolet Pick-up truck, white and green in color, displaying Colorado Recreational Truck license plates PH–3996, located on Elmira Street in front of 2264 Elmira Street City of Aurora, County of Adams, State of Colorado. Material evidence will be found and used in a subsequent prosecution in this state for violations of the Colorado Controlled Substances Act as set forth in section 18–18–105, CRS 1973, as amended."