The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Karen D. McFALL, Robert A. McFall,
and Jeffrey L. Eitel,
Defendants-Appellees.

No. 83SA74.

Supreme Court of Colorado,
En Banc.

Dec. 5, 1983.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

Richard B. Deutsch, Denver, for defendant-appellee, Robert A. McFall.

Barbara M. Jacobi, Denver, for defendant-appellee, Karen D. McFall.

Cyrus C. Callum, Denver, for defendant-appellee, Jeffrey L. Eitel.

ERICKSON, Chief Justice.

This is an interlocutory appeal by the district attorney from an order of the Denver District Court suppressing evidence seized pursuant to a search warrant. We reverse and remand for further proceedings consistent with this opinion.[1]

1. Robert McFall and Karen McFall were charged with theft by receiving, section 18–4–410, C.R.S.1973 (Repl. Vol. 8); unlawful distribution, manufacturing, dispensing, sale and possession of a controlled substance, section 18–18–105, C.R.S.1973 (Repl. Vol. 8); conspiracy to commit theft by receiving and unlawful distribution, manufacturing, dispensing, sale and possession of a controlled substance, section 18–2–201, C.R.S.1973 (Repl. Vol. 8). Jeffrey Eitel was charged with theft by receiving, section 18–4–410, C.R.S.1973 (Repl. Vol. 8); and conspiracy to commit theft by receiving and unlawful distribution, manufacturing, dispensing, sale and possession of a controlled

On September 16, 1982, a confidential informant told Detective Patrick Fitzgibbons that Bob and Jasmine were selling cocaine and methamphetamine (speed) from their house at 403 Colorado Boulevard. The confidential informant was taken to 403 Colorado Boulevard and identified the house.

On September 20, 1982, Detective Fitzgibbons received information from a second confidential informant that Bob and Jasmine lived at 403 Colorado Boulevard and would trade speed for stolen merchandise. The second informant identified a picture of Robert McFall as the person who was trading narcotics. Detective Fitzgibbons verified from utility listings that Robert McFall lived at 403 Colorado Boulevard. On the afternoon of September 20, 1982, the second informant and Detective Fitzgibbons went to the McFalls' house at 403 Colorado Boulevard. At that time, the second informant introduced the detective to Robert "Bob" McFall, Karen "Jasmine" McFall, and Jeffrey Eitel (defendants). Detective Fitzgibbons told the defendants that he wanted to trade a stolen television set for several grams of speed. Robert McFall agreed to the trade but changed his mind after his wife whispered something to him. He offered, instead, to buy the stolen television set for $150. Jeffrey Eitel then paid the detective. During the conversation that followed, Detective Fitzgibbons commented on the "nice stuff" that the McFalls had in their house and they replied that most of it had been stolen.

Thereafter, Detective Fitzgibbons asked for help in carrying the television set into the house. Karen McFall said to wait until dark to move the television set into the house because the Vice Bureau was outside. The defendants then decided to put the television set into Jeffery Eitel's automobile. Detective Fitzgibbons parked his automobile next to Eitel's automobile to assist in the delivery of the television set. While the television set was being transferred, two surveillance detectives drove up behind the Fitzgibbons' automobile but

were unable to pass. Detective Fitzgibbons, upon completion of the transfer, drove away from the McFalls' house followed by the two surveillance detectives. The three detectives stopped a short distance from the McFalls' house to discuss the operation. They concluded that their cover had been broken when they thought Eitel recognized the two surveillance detectives. They decided to arrest the defendants for theft by receiving.

The detectives returned to the McFalls' house, knocked on the front door, and identified themselves as police officers. The detectives heard yelling and the sounds of hurried movement inside the house and kicked the door down. One of the detectives arrested Karen McFall in the bathroom while she was attempting to flush syringes and clear plastic packets down the toilet. The detective reached into the toilet and recovered two plastic bags containing speed. Detective Fitzgibbons searched the house and found speed on a gram scale in a bedroom.

After the arrest and warrantless search, Detective Fitzgibbons prepared an affidavit to obtain a search warrant. The affidavit contained information from the two confidential informants and Detective Fitzgibbons' observations during the undercover operation. The affidavit also set forth the information that the detectives acquired during the arrest of Karen McFall and the warrantless search of the house. Based on the affidavit, a Denver County judge issued search warrants for the McFalls' house and the Eitel automobile. In the McFalls' house, detectives found drugs, drug paraphernalia, and several items which they suspected were stolen. The detectives also recovered the television set from Eitel's automobile.

■ The defendants filed a motion to suppress the evidence obtained as a result of the warrantless arrest and the evidence seized pursuant to the search warrants. The district court granted the motion. The court concluded that exigent circumstances

did not exist to justify the defendants' arrest or the subsequent search of the house without a warrant.[2] The court suppressed the evidence discovered during the second search because the affidavit for the search warrants was tainted by the prior illegal arrest and search and was fruit of the poisonous tree.

■ The district court found, in addition, that the information set forth in the affidavit which was provided by the two confidential informants, failed to satisfy the two-pronged *Aguilar-Spinelli* test.[3] The affidavit did not contain facts to establish the informants' reliability or their basis of knowledge of the defendants' illegal activities. The district court refused to consider whether the affidavit would have been sufficient to establish probable cause after the illegal information from the warrantless arrest and the information from the confidential informants was deleted.[4] Assuming that the affidavit established probable cause, the district court concluded that the deterrence of illegal police searches requires suppression of the evidence obtained in the second search.

The district attorney has not appealed the trial court's suppression of the evidence seized as an incident of arrest and, for that reason, the exigent circumstances issue is not before us. The only issue on appeal is whether the trial court erred when it suppressed the evidence seized in the second search. The district attorney contends that the affidavit contains sufficient information obtained from independent sources to establish probable cause.

■ The fruit of the poisonous tree doctrine excludes evidence discovered as a result of a Fourth Amendment violation. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *People v. Orf,* 172 Colo. 253, 472 P.2d 123 (1970). Where a search pursuant to a warrant follows an illegal warrantless search, evidence acquired during the second search will be suppressed if it is tainted by the first illegal search. *People v. Turner,* 660 P.2d 1284 (Colo.1983). The fruit of the poisonous tree doctrine does not apply when the government can show that it obtained the evidence from an independent source untainted by illegal police conduct. *United States v. Crews,* 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); *Silverthorne Lumber Co. v. United States, supra; United States v. Weller,* 652 F.2d 964 (10th Cir.1981); *United States v. Romero,* 585 F.2d 391 (9th Cir.1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979); *Carpenter v. United States,* 463 F.2d 397 (10th Cir.), *cert. denied,* 409 U.S. 985, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972); *People v. Turner, supra; People v. Orf, supra.*

■ The information provided by the confidential informants and Detective Fitzgibbons' undercover observations were obtained before the illegal arrest and search and, therefore, were independent sources of the defendants' criminal activities. The de-

---

2. In order to justify a warrantless entry and arrest of a defendant in his house, the prosecution must establish the existence of both probable cause and exigent circumstances. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *People v. Bustam,* 641 P.2d 968 (Colo.1982); *People v. Williams,* 200 Colo. 187, 613 P.2d 879 (1980).

3. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

4. The validity of a search warrant does not turn upon the existence of unlawfully obtained in-

formation in the affidavit supporting the warrant. *Grimaldi v. United States,* 606 F.2d 332 (1st Cir.1979); *People v. Turner,* 660 P.2d 1284 (Colo.1983). The fact that some portions of an affidavit are erroneous does not require that the remainder of the affidavit be ignored. *People v. Hampton,* 196 Colo. 466, 587 P.2d 275 (1978); *People v. Malone,* 175 Colo. 31, 485 P.2d 499 (1971). Where an affidavit includes illegally obtained evidence as well as evidence derived from independent and lawful sources, a valid search warrant may issue if the lawfully obtained evidence, considered by itself, establishes probable cause to issue the warrant. *Grimaldi v. United States, supra; People v. Dailey,* 639 P.2d 1068 (Colo.1982).

fendants do not dispute that some of the information in the affidavit was from independent sources but claim that the facts failed to establish probable cause without the additional tainted evidence obtained as a result of the illegal arrest. The defendants maintain that the sufficiency of the affidavit must be determined exclusively from the observations of Detective Fitzgibbons and that the informants' allegations are not to be considered because the district court found the affidavit failed to satisfy the *Aguilar-Spinelli* test.[5] An affidavit for a search warrant, predicated on information from an undisclosed informant, must allege sufficient facts from which the issuing judge may independently determine (1) the adequacy of the informant's basis for his allegations that evidence of crime will be found at the place to be searched and (2) the credibility of the informant or the reliability of his information. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Conwell,* 649 P.2d 1099 (Colo.1982); *People v. Ball,* 639 P.2d 1078 (Colo.1982); *People v. Dailey,* 639 P.2d 1068 (Colo.1982), *People v. Stoppel,* 637 P.2d 384 (Colo.1981).

The affidavit stated that two unrelated confidential informants had told Detective Fitzgibbons that the defendants were trading narcotics for stolen merchandise. The detective verified part of the informants'

allegations by having the first informant identify the house in question and by having the second informant identify a picture of Robert McFall. The detective also determined that the utilities for 403 Colorado Boulevard were listed in Robert McFall's name.

■ In the affidavit, Detective Fitzgibbons set forth that the second confidential informant had provided reliable information on three previous occasions which had led to the recovery of drugs and stolen items and the filing of criminal charges in district court. A declaration that an informant supplied previous reliable information that led to the seizure of contraband and the arrest of suspects is adequate to establish an informant's credibility. *People v. Dailey,* 639 P.2d 1068 (Colo.1982); *People v. Arnold,* 186 Colo. 372, 527 P.2d 806 (1974); *People v. Ward,* 181 Colo. 246, 508 P.2d 1257 (1973).

■ The second informant substantiated her veracity and basis of knowledge by participating in the undercover operation. Moreover, Detective Fitzgibbons' personal observations during the operation independently established probable cause.[6] Probable cause depends upon probabilities rather than certainties, on knowledge grounded in the practical considerations of every day life on which reasonable and prudent person act. *Draper v. United States,* 358 U.S. 307,

5. The district court's suppression order preceded *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* the United States Supreme Court abandoned the two-pronged *Aguilar-Spinelli* test and created a totality of the circumstances standard. The Supreme Court said: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* —— U.S. at ——, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. A magistrate is to balance "the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Id.* 103 S.Ct. at 2330, 76 L.Ed.2d at 545. An informant's veracity, reliability, and basis of knowl-

edge are factors to be considered in determining whether there is probable cause but they are not independent requirements to be rigidly exacted in every case. *Id.* 103 S.Ct. 2327, 2328, 76 L.Ed.2d at 542–543. *See also United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *People v. Conwell,* 649 P.2d 1099 (Colo.1982); *People v. Ball,* 639 P.2d 1078 (Colo.1982). The defendant did not have an opportunity to argue the *Gates* totality of the circumstances standard on appeal. Therefore, we are relying solely on the more stringent *Aguilar-Spinelli* test for our decision.

6. Significantly, the district court concluded that the police had probable cause to arrest the defendants for theft by receiving and for possession of a controlled substance, based on Robert McFall's statements that he had a small amount of speed.

79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Conwell, supra; People v. Eichelberger,* 620 P.2d 1067 (Colo.1980); *People v. Williams,* 200 Colo. 187, 613 P.2d 879 (1980); *People v. Bates,* 190 Colo. 291, 546 P.2d 491 (1976).

■ We conclude that the affidavit, after the deletions were made, provided sufficient reliable information from the two informants and from Detective Fitzgibbons' observations to permit a judge to find probable cause to search the McFalls' house and Eitel's automobile for drugs, drug paraphernalia, and stolen property. Accordingly, the search warrant was not tainted by illegal police conduct and the evidence seized during the search pursuant to a warrant was improperly suppressed as fruit of the poisonous tree.

The ruling of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.