The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

Cynthia Lynn **HENSON**,
Defendant-Appellant.

No. 83CA0792.

Colorado Court of Appeals,
Div. II.

March 7, 1985.

Rehearing Denied April 4, 1985.

Certiorari Denied Aug. 26, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Seth J. Benezra, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Judge.

The defendant, Cynthia Lynn Henson, appeals her conviction of two counts of possession of marijuana. She argues that the trial court erred in denying her motion to suppress statements allegedly elicited as a result of an illegal arrest and her motion to suppress evidence alleged to be the product of an illegal search. We affirm.

After having been granted immunity, Henson testified in 1980 before a statewide grand jury about her drug activities and her knowledge of drug dealers in various parts of Colorado. During her grand jury testimony, Henson had admitted that on two previous occasions she had been in possession of 200 pounds of marijuana. Knowing of this testimony, Detectives Millwright and Ortiz of the Colorado Springs Police Department went to interview Henson at her Palmer Lake home in August 1982, to obtain further information from her in connection with a continuing statewide narcotics investigation.

When Millwright approached the front door of Henson's home, he smelled the odor of burning marijuana coming from an open window. Millwright knocked, and the door was opened by a Mr. Floyd, previously unknown to the officer. Floyd, whose eyes were red and glassy, informed Millwright that Henson was at work, gave the location, and the detectives departed.

Millwright and Ortiz communicated with their superior, Officer Shull, who instructed them to go to the store where Henson worked. Millwright and Ortiz approached Henson at work, told her what they had discovered at her home, and asked her to sign a search waiver. She became angry, refused to sign a search waiver, and refused to talk with them further. When Henson left the store, Millwright and Ortiz attempted to follow her, but lost sight of her car in traffic.

In the meantime, Shull and two other officers had proceeded to Henson's home. When Millwright and Ortiz lost Henson in traffic, Millwright called Shull by radio at Palmer Lake. As a result, Shull became concerned that Henson would attempt to contact Floyd by telephone to alert him of her encounter with the detectives, and thus, he decided to enter and secure the house until a search warrant could be obtained.

Shull and the two officers entered the house and instructed Floyd to sit on the living room sofa while they made a quick visual check of the premises. No further search was made at this time. Shull then left to attempt to intercept Henson on her way to the house.

Within about five minutes, Henson entered the living room. She asked the two officers to show her their search warrant. Upon being told that one had not yet been obtained, Henson attempted to pass the officers to gain access to the rear portion of the house. She was stopped, and she again demanded to see the search warrant. One officer then took her by the arm and directed her to be seated on the couch. It is undisputed that this was an arrest.

About three hours after their original entry into the house, the officers received information that the search warrant had been issued; they then searched the premises and located six pounds of marijuana in a metal container in a room near the kitchen. Although Henson was not interrogated by the officers, she stated to Floyd, after the discovery of the marijuana, "Well, they found it." She then said to the officer, "Well, if you found it, you found it all." The officers also seized an address book containing entries which appeared to relate to drug transactions.

The trial court ruled that Henson's arrest was not illegal and, accordingly, declined to suppress her statements. The trial court also concluded that there was probable cause to support the issuance of the search warrant.

I.

The defendant first argues that her arrest was illegal since it was not supported by probable cause. We disagree, and because here the arrest is illegal only if the entry was illegal, we consider both issues.

■ The prosecution must establish the existence of both probable cause and exigent circumstances to justify a warrantless entry and arrest. *People v. Turner,* 660 P.2d 1284 (Colo.1983). Probable cause exists only if the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that an offense has been or is being committed. *People v. Severson,* 39 Colo.App. 95, 561 P.2d 373 (1977). The threat of immediate destruction or removal of evidence is an exigent circumstance justifying a warrantless search or seizure. *People v. Bustam,* 641 P.2d 968 (Colo. 1982).

■ Here, we conclude that the officer's entry into the defendant's home and her subsequent arrest were based on probable cause. The officers knew that a man had probably smoked marijuana at the defendant's residence a few hours earlier. When the officers informed the defendant of this fact, she refused to cooperate with them.

■ The entry was also accompanied by exigent circumstances. The factors which determine the existence of exigent circumstances are: "(1) the degree of urgency and the time required to obtain a warrant, (2) reasonable belief that evidence or contraband would be removed or destroyed, (3) information that those in possession of the evidence or contraband are aware that the police are closing in, and (4) the ease of destroying the evidence or contraband and the awareness that narcotics dealers often try to dispose of narcotics and escape under the circumstances." *People v. Bustam, supra.*

Here, the officers knew that it would require some time to travel from Palmer Lake to Colorado Springs to obtain a warrant. They also knew that Floyd was in a position to destroy the evidence and that both Floyd and Henson were aware of police suspicions. It would have been a simple matter to dispose of the contraband had the officers not secured the premises.

■ Further, the trial court properly ruled that Henson's arrest was legal. After arriving at her home, the defendant twice attempted to interfere with the officers' securing of the premises. The officers were authorized to do what was reasonably necessary to prevent the destruction of evidence and to preserve the status quo. *See United States v. Neet,* 504 F.Supp. 1220 (D.Colo.1981). This includes restraining anyone who may attempt to interfere.

■ Thus, both the entry and arrest were legal. However, even if we were to assume otherwise, suppression of defendant's statement would not be required because there is no nexus between the entry and arrest and the statements made when the evidence was discovered.

■ Evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint. *Segura v. United States,* 468 U.S.

——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Nardone v. United States,* 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

In *Segura,* the United States Supreme Court considered whether the securing of a dwelling to prevent the destruction or removal of evidence, pending receipt of a search warrant, itself constitutes an unreasonable seizure of all of the contents of the dwelling. The court held that:

> "[W]here officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interest in its contents and take them into custody and ... secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures."

The court went on to say that the illegality of an initial entry has no bearing on the admissibility of evidence seized after receipt of a valid warrant if the warrant is based on information totally independent of that obtained as a result of the entry. In *Segura,* as here, "[n]o information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the [house] constituted an independent source for the discovery and seizure of the evidence now challenged." Hence, we conclude that the entry and arrest, even if illegal, did not contribute in any way to the statements made by Henson. Accordingly, since her statements were the result of a search pursuant to a valid warrant, there was no error in their admission.

## II.

The defendant also contends that the trial court erred in denying her motion to suppress an address book, discovered during the search, which contained notes concerning a drug transaction. She claims that the affidavit in support of the search warrant improperly contained information concerning testimony she gave to a grand jury two years prior to this incident. The defendant argues that this information could not be used to support a finding of probable cause to search her house because her testimony was given pursuant to a grant of transactional immunity. We agree.

▮▮▮ At the grand jury proceedings, the defendant was granted transactional immunity pursuant to § 13–90–118, C.R.S., which provides that once a witness has been granted immunity, the witness may not be "prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing" concerning the witness' testimony. Transactional immunity precludes prosecution for any transaction or affair about which a witness testifies. *Wheeler v. District Court,* 184 Colo. 193, 519 P.2d 327 (1974). While immunity from use and derivative use is equal in scope with the privilege against self-incrimination, transactional immunity affords protection beyond the Fifth Amendment protection. Even testimony given under the narrower protection of use and derivative use immunity may not be used as an investigatory tool leading to the infliction of criminal penalties. *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

▮▮▮ Here, the defendant's immunized grand jury testimony was included in the affidavit to support the warrant, the execution of which led to the seizure of the contraband providing the basis for this prosecution. We hold that this use of the immunized testimony falls directly within the statutory provision protecting the defendant from penalty or forfeiture on account of the matter to which she testified.

▮▮▮ Nevertheless, the validity of the search warrant here does not depend solely on the existence of unlawfully obtained information in the affidavit supporting it. That some of the facts in the warrant were illegally obtained or were used impermissibly does not require that other facts be ignored. *People v. McFall,* 672

P.2d 534 (Colo.1983). Here, there was sufficient evidence to establish probable cause without using the immunized testimony.

 In a search pursuant to a warrant, the constitutional standard of probable cause requires that the affidavit allege sufficient facts to warrant a person of reasonable caution in the belief that contraband or material evidence of criminal activity is located on the premises to be searched. *People v. Ball,* 639 P.2d 1078 (Colo.1982). Probability, not certainty, is the touchstone of probable cause. *People v. Ball, supra.* In determining the issue of probable cause, a court must interpret the affidavit in a common sense and realistic fashion. *People v. Ball, supra; People v. Lindholm,* 197 Colo. 270, 591 P.2d 1032 (1979); *see also People v. Banks,* 696 P.2d 293 (Colo.1985).

 The affidavit states that Detective Millwright approached the defendant's residence and could smell a strong odor of burning marijuana coming from an open window. After he knocked at the front door, a young man appeared with eyes that were red and glassy. This information justifies the inference that contraband was present on the premises, and a warrant was properly sought and issued authorizing a search for marijuana and indicia of its ownership.

In view of these conclusions, it is not necessary to address other arguments raised by defendant.

The judgment is affirmed.

SMITH and STERNBERG, JJ., concur.