**William Clifford BARTLEY, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 90SC263.**

Supreme Court of Colorado,
En Banc.

Oct. 7, 1991.

David F. Vela, Colorado State Public Defender and Duane M. Kline III, Special Deputy State Public Defender, Boulder, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen. and John Daniel Dailey, Asst. Atty. Gen., Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

The defendant, William Clifford Bartley, was convicted of the crimes of second degree burglary [1] and theft [2] as a result of a jury trial in the District Court for Dolores County. On appeal he contended that certain evidence received in his trial was obtained in violation of the prohibition of unreasonable searches and seizures set forth in article II, section 7, of the Colorado

---

1. § 18–4–203, 8B C.R.S. (1986).

2. § 18–4–401(2)(b), 8B C.R.S. (1986) (theft of item having value of fifty dollars or more but less than three hundred dollars).

Constitution. Specifically, he argued that even though the evidence was discovered by a search conducted pursuant to a warrant, the affidavit for the warrant contained information obtained by a constitutionally impermissible aerial inspection of his secluded rural property. The Colorado Court of Appeals held the aerial viewing to be consistent with the Colorado Constitution and sustained the defendant's conviction. *People v. Bartley,* 791 P.2d 1222 (Colo.App.), *cert. granted,* 803 P.2d 950 (Colo.1990). We conclude that the affidavit for search warrant contained sufficient information independent of that obtained by the aerial observation to support the issuance of the warrant. We therefore affirm the judgment of the court of appeals but find it unnecessary to reach the constitutional question. Even assuming that the admission of the aerial observations into evidence at trial violated the Colorado Constitution, we hold that such error was harmless beyond a reasonable doubt.

I.

The factual averments in the affidavit for search warrant executed by undersheriff Ralph D. Prideaux of the Dolores County Sheriff's Department explain how this case arose and provide the basis on which a county judge issued a search warrant for the defendant's premises. At about 2:00 a.m. on May 14, 1987, deputy Jerry Martin of the Dolores County Sheriff's Department contacted undersheriff Prideaux and informed him of a theft of wheat from a grain bin in rural Dolores County. Prideaux and Martin traveled to the site, where they saw and photographed tire tracks in a small driveway leading off a county road. The tracks stood out clearly because of a rain storm the previous evening. The officers then drove three or four hundred yards up the driveway to a grain bin. Near the grain bin, Prideaux observed identical tire tracks. He also saw grains of wheat spilled onto a concrete slab in front of the door to the grain bin and noted a

warning sign on the door of the bin forbidding anyone from removing the products.[3] The sign also indicated that the products inside the bin belonged to the United States government. Martin told Prideaux that the bin door had been open when he visited the scene earlier that morning and that he had closed the door. The officers then followed the tire tracks. The tracks proceeded several miles along county roads to a point where they turned in at a private driveway. From the appearance of the tracks, Prideaux thought they were made by two different vehicles or one vehicle pulling a trailer. In the driveway itself, Prideaux identified the tracks of six tires, and it appeared to him that the tracks consisted of four made by one vehicle and two made by worn highway tread tires mounted on a trailer. The driveway was a one lane dirt road and proceeded three to five hundred yards slightly uphill. No buildings could be seen from the county road. Persons in the sheriff's office knew the property was that of the defendant.

Instead of entering the defendant's property, the officers went to the Dove Creek airport and engaged a pilot and an airplane to fly over that property. The flight enabled Prideaux to see a red and white pickup with a small attached trailer parked near the defendant's residence. The officers took several photographs from the airplane. Then they returned to the airport and proceeded to the sheriff's office. Prideaux dispatched Martin to the intersection of the county road and the defendant's driveway to watch for any pickup truck leaving the premises. Meanwhile, Prideaux went to the district attorney's office. There, he executed an affidavit for a search warrant based on the above information, and the county judge issued a warrant to search the defendant's property for items including vehicles, trailers and wheat. Prideaux and other officers then executed the warrant and discovered items including a red and white pickup and a

---

**3.** At trial, Martin testified that the grain bin and contents were owned jointly by him, his brother and his sister, that the grain was collateral for a government loan, and that under the loan agree-

ment the grain was not to be removed from the bin. The affidavit for search warrant did not contain this information.

trailer half-full of wheat and having no wheels.

The district attorney filed charges of burglary and theft against the defendant in Dolores County District Court based on the taking of the grain. The defendant moved to suppress evidence, asserting, among other things, that the affidavit in support of the search warrant was legally insufficient because "it relies on information acquired by an illegal aerial search which invaded the curtilage of the defendant" in violation of the fourth amendment to the United States Constitution and article II, section 7, of the Colorado Constitution.[4]

The district court held an evidentiary hearing on the motion to suppress, and received into evidence the affidavit for the search warrant and the warrant itself. Prideaux testified briefly about the execution of the warrant. The court held that the observation of the defendant's property from an airplane did not violate any reasonable expectation of privacy of the defendant. In so ruling, the court relied on *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). It also rejected the defendant's claim that the search was an impermissible general search given the scope of the items described in the affidavit and warrant. Accordingly, the district court denied the motion to suppress evidence. The case then proceeded to a jury trial and the defendant was found guilty as charged.

The defendant appealed to the Colorado Court of Appeals on the sole ground that the district court erred in declining to suppress evidence obtained as a result of the flight over the defendant's property. On appeal, the defendant conceded that the evidence was not seized in violation of the fourth amendment to the United States Constitution, under the authority of *Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989), and *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). He contended, how-

ever, that article II, section 7, of the Colorado Constitution provides more extensive protections against searches and seizures than does the fourth amendment, and that the flight was constitutionally unreasonable under the Colorado constitutional standards. *Bartley*, 791 P.2d at 1223. In reviewing his contentions, the court of appeals relied on *Hoffman v. People*, 780 P.2d 471 (Colo.1989), in which this court held that a person's reasonable expectation of privacy in a home and curtilage does not extend to marijuana plants growing in a garden behind a home but subject to observation from the adjoining alley. By analogy, the court of appeals held that the Colorado Constitution does not protect the defendant against a view of his premises from an aircraft in the manner that occurred here. *Bartley*, 791 P.2d at 1223. The court of appeals emphasized the absence of any contention that the flight path or altitude of the airplane violated any applicable law or that the information obtained was not visible to the naked eye. Accordingly, the court of appeals affirmed the conviction. We granted certiorari to determine whether the warrantless aerial surveillance of the defendant's property violated the prohibition of unreasonable searches and seizures found in article II, section 7, of the Colorado Constitution.

## II.

■ Upon review of the record, we conclude that it is unnecessary to reach the constitutional question upon which we granted certiorari because the information gleaned from the aerial survey is not necessary to the validity of the warrant.

■ Well established principles provide guidance for our assessment of the sufficiency of the affidavit for search warrant under the Colorado Constitution. A search warrant must be based upon "probable cause, supported by oath or affirmation reduced to writing." Colo.Const. art. II,

---

**4.** The defendant also moved to suppress evidence obtained by a search conducted pursuant to a warrant on the day following the original search. The prosecutor represented that nothing seized in the later search would be offered

in evidence, and based upon that representation the court did not rule on the validity of the later search. No issue concerning that search is presented on this certiorari review.

§ 7. "Probable cause for a search warrant exists when the affidavit in support of the warrant alleges sufficient facts to warrant a person of reasonable caution to believe that contraband or other evidence of criminal activity is located at the place to be searched." *People v. Arellano*, 791 P.2d 1135, 1137 (Colo.1990). *Accord, e.g., People v. Hill*, 690 P.2d 856, 859 (Colo.1984); *People v. Hearty*, 644 P.2d 302, 309 (Colo. 1982). In assessing whether this constitutional standard for probable cause has been satisfied, an affidavit for search warrant must be interpreted in a common sense and realistic fashion. *Arellano*, 791 P.2d at 1137–38. *Accord, e.g., Hill*, 690 P.2d at 859; *People v. Ball*, 639 P.2d 1078, 1082 (Colo.1982). Due consideration should be given to a law officer's experience and training in evaluating the significance of the officer's observations relevant to probable cause. *Ball*, 639 P.2d at 1082.

■ Information obtained solely by unconstitutional means cannot be relied upon to supply probable cause to support a search warrant. *People v. McFall*, 672 P.2d 534, 537 (Colo.1983). If an affidavit for search warrant contains such information, however, suppression of evidence seized pursuant to the warrant does not automatically follow. *Id.* In such circumstances a court should evaluate whether the legally obtained information in the affidavit is sufficient, independent of that secured by unconstitutional means, to establish probable cause. *Id.* at 537 n. 4. "Where an affidavit includes illegally obtained evidence as well as evidence derived from independent and lawful sources, a valid search warrant may issue if the lawfully obtained evidence, considered by itself, establishes probable cause to issue the warrant." *McFall*, 672 P.2d at 537 n. 4. *Accord People v. Turner*, 660 P.2d 1284, 1288 (Colo.1983); *see People v. Hensen*, 705 P.2d 996, 1000–01 (Colo.App.1985) (even though defendant's immunized grand jury testimony was described in affidavit for search warrant, other information in the affidavit was independently sufficient to establish probable cause). It is with all of the foregoing principles in mind that we address the sufficiency of officer Prideaux's affidavit to establish probable cause to believe that evidence of a theft of wheat was to be found on the defendant's property.

The information obtained independently of the aerial survey establishes probable cause to support the issuance of the warrant. The officers observed the grain bin with a sign forbidding anyone from removing the products inside the bin. The bin door was open when Martin first saw it. Wheat was spilled on the concrete slab in front of the door. The officers could plainly see tracks of a vehicle pulling a trailer and proceeding from the bin onto the county road. A recent rain made the tracks distinct, identifiable, and easy to follow to the defendant's driveway. The officers saw the tracks proceed up the defendant's driveway and out of sight.

The officers obtained all of the foregoing information before the airplane flight. These facts without question would warrant a person of reasonable caution to believe that someone had recently taken wheat from the bin without permission and transported it to the defendant's residence. This supplied probable cause for issuance of a warrant to search the defendant's property for the purloined wheat and the vehicles that transported it. The information obtained by the airplane flight, therefore, was not necessary to the validity of the affidavit for search warrant. Accordingly, the aerial observations described in Prideaux's affidavit may be disregarded and the warrant and search conducted pursuant to it sustained on the basis of the other completely independent information in the affidavit. *See McFall*. The motion to suppress, therefore, was properly denied.[5]

---

5. A court should not address a constitutional issue unless it is necessary to decide a case. *People v. Lybarger*, 700 P.2d 910, 915 (Colo. 1985); *Kelley v. South Jeffco Metro. Recreation & Park Dist.*, 155 Colo. 469, 473, 395 P.2d 210, 212 (1964); *People v. Pirie*, 78 Colo. 361, 365–66, 242 P. 72, 73–74 (1925). We therefore disapprove the lower courts' discussions of the constitutional propriety of the observations made by

### III.

■ Our analysis must now turn to the potential impact of the aerial observations on the trial itself. At trial, the prosecution introduced certain evidence obtained from the aerial surveillance of the defendant's property. Assuming, without deciding, that such surveillance was an unreasonable search under the Colorado constitutional standards, we hold that the admission of evidence so obtained was harmless beyond a reasonable doubt.

■ If an asserted error is of constitutional dimension, reversal is required unless the court is convinced that the error was harmless beyond a reasonable doubt. *E.g., Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); *Graham v. People*, 705 P.2d 505, 509 (Colo.1985). A constitutional error is harmless when the evidence properly received against a defendant is so overwhelming that the constitutional violation was harmless beyond a reasonable doubt. *People v. Myrick*, 638 P.2d 34, 38 (Colo.1981).

In this case, the constitutionally admissible evidence establishing the defendant's guilt was overwhelming. Fresh and vivid tire tracks led directly from the wheat bin to the defendant's driveway. At about 5:30 in the afternoon on the day the theft was discovered, the sheriff's officers executed a search warrant at the defendant's property and found a trailer on stone blocks, without wheels. Officer Martin, one of the owners of the wheat bin, testified the trailer contained wheat that closely resembled the wheat stolen from his bin. Martin's method of threshing resulted in cracking of some of the kernels and produced a number of hulls. The wheat in the trailer exhibited these characteristics. In addition, the crop Martin stored in the bin suffered yellow berry condition. This wheat also had that problem.[6] The jurors themselves viewed photographs of the tracks, the trailer and the wheat.

Martin testified that Prideaux arrested the defendant during the course of the search. After being advised of his *Miranda*[7] rights, the defendant agreed to answer questions. In response to questioning, he stated that the wheels had been off the trailer for several months and that it had been parked in the spot where the officers found it since early March. Undersheriff Prideaux confirmed this part of officer Martin's testimony. Martin attested, however, that the grass under the stump supporting the tongue of the trailer was bright green and the mud in a wheel well appeared and felt fresh. The jurors viewed pictures of the green grass and the mud in the wheel well.

During the course of their search, the officers also discovered a red and white pickup truck parked in sagebrush among some trees. Martin testified that the tires on this pickup made the tracks found near the wheat bin.

For the most part, the potentially tainted evidence simply reinforced the potent inference of guilt raised by the constitutionally admissible evidence. The evidence obtained by aerial observation may be summarized. Officers Martin and Prideaux testified to the observations made and photographs taken of the defendant's property from the airplane. Martin attested that he had seen the red and white truck, with the trailer attached, parked on the defendant's property. The court received aerial photographs depicting the truck and trailer into evidence. In addition, Prideaux used the aerial observations to impeach statements made by the defendant during the search of his premises.[8] Prideaux noted that dur-

---

the officers from the airplane. We express no opinion on the merits of that issue.

**6.** The defendant told Prideaux in response to questioning that he had obtained the wheat from William Gordon the previous fall and later put it in the trailer. Gordon testified in the defendant's case and confirmed that he had put

some wheat in the defendant's pickup the preceding fall.

**7.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**8.** Based on his observations of the pickup truck from the airplane, Prideaux questioned the de-

ing the aerial observations he ascertained that the trailer had wheels and was attached to the pickup. In contrast, the defendant had stated to Prideaux that the trailer had been up on blocks for months. In closing argument, the prosecutor called the jury's attention to the aerial observations and the extent to which the observations undercut the defendant's story.

It is true that the aerial photographs served to impeach the defendant's statements about the period of time during which the trailer had been on blocks and without wheels. However, his statements were also impeached by independent evidence. Officer Martin's observations of the fresh mud in the trailer wheel well and the green grass under the stump supporting the trailer strongly contradicted the defendant's statements. Photos corroborated Martin's observations. More importantly, the uncontradicted evidence about the path of the pickup and trailer from the grain bin to the defendant's property, the wheat found in the trailer, and the match between the tire marks found at the bin and the tires on the red and white pickup constituted overwhelming evidence of the defendant's guilt. We are mindful that the harmless error doctrine is to be sparingly applied. *Myrick*, 638 P.2d at 38. Nevertheless, under these circumstances, we conclude that the admission of the evidence gained by flying over the defendant's property, including the photographs taken during that flight, even if impermissibly received, was harmless beyond a reasonable doubt.

We affirm the judgment of the Colorado Court of Appeals.

ERICKSON, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

Justice ERICKSON specially concurring:

We granted certiorari to determine whether the warrantless aerial surveillance

of defendant Bartley's driveway violated article II, section 7 of the Colorado Constitution. Bartley has conceded that none of the rights guaranteed by the fourth amendment to the United States Constitution have been violated. I can perceive no principled reason in construing article II, section 7 of the Colorado Constitution differently than the United States Supreme Court decisions interpreting the fourth amendment to the United States Constitution. *See Florida v. Riley*, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989); *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). Both federal decisions would uphold aerial surveillance under the facts of this case. I would therefore hold that there was no error. Consequently, there is no reason to invoke the harmless error doctrine to resolve the issue before us.

VOLLACK, J., joins in this special concurrence.

fendant about the ownership of the red and white truck. The defendant denied owning such a truck but stated that a vehicle of that description had appeared on his property earlier that day, driven by a person seeking work. The aerial surveillance, therefore, produced information for a question that triggered the defendant's denial of ownership of the red and white pickup and, when refuted, resulted in undermining his credibility.