**No. 80SA88**

**The People of the State of Colorado v. Thomas Ray Williams, Patrick Kevin Sullivan, James Salnajs, and Gary Don Jenkins**

(613 P.2d 879)

Decided June 30, 1980.

Nolan L. Brown, District Attorney, Michael B. Tully, Senior Deputy, for plaintiff-appellant.

E. Michael Canges, for defendant-appellee, Williams.

Walter Gerash, for defendant-appellee, Sullivan.

Marshall Quiat, for defendant-appellee, Salnajs.

Joseph Saint-Veltri, Emerson B. Semple, for defendant-appellee, Jenkins.

*En Banc.*

JUSTICE LOHR delivered the opinion of the Court.

The defendants have been charged with possessing a narcotic drug and with selling and dispensing a narcotic drug.[1] In this interlocutory appeal,[2] the People challenge the district court's order granting the defendants' motions to suppress cocaine and other physical evidence relating to those charges. We reverse.

The facts are uncontroverted. On March 28, 1979, and April 18, 1979, two undercover police agents (agents) met defendant Salnajs in the parking lot of a restaurant. At the first meeting one-half ounce of cocaine was purchased from Salnajs; one ounce of cocaine was purchased from Salnajs at the second meeting.

On May 15, 1979, the agents met Salnajs at the same place where they had met him on the two prior occasions. The meeting was arranged among the parties to enable the agents to purchase one pound of cocaine. The purchase price was to be $30,400, and Salnajs was to receive one ounce of cocaine for arranging the transaction. Salnajs arrived at the meeting place in a Mercedes driven by defendant Sullivan. Salnajs asked the agents to follow the Mercedes to a different location. The agents agreed to do so and were led to the 7400 block of South Teller Street in Lakewood. Surveillance teams from the Lakewood Department of Public Safety followed the two cars to that location.

Sullivan parked his car on the side of the road and approached a residence at 7428 South Teller Street. He was gone for about a minute and

---

[1] Section 12-22-302, C.R.S. 1973 (now in 1978 Repl. Vol. 5).
[2] *See* C.A.R. 4.1.

then came to the vehicle occupied by the agents and informed them that the person he and Salnajs expected to meet at the house was not there. Sullivan stated that the individual apparently had not come back from the airport yet. Sullivan expressed concern that the individual might have been arrested.

Approximately five minutes later another vehicle, a BMW, pulled into the driveway of the residence at 7428 South Teller Street. As Sullivan moved toward the BMW, the driver, defendant Williams, stepped out of the car, opened the trunk, and removed something from it. Williams and Sullivan then went toward the residence. Ten or fifteen minutes later Sullivan came to the agents' vehicle with a sample of the cocaine that was to be purchased. One of the agents informed Sullivan that the sample was good. Sullivan then went back to the Mercedes and he and Salnajs went toward the residence. About one-half hour later Salnajs brought a paper bag to the agents' vehicle. He gave them the paper bag, which contained cocaine packaged in a cellophane bag, and informed the agents that one ounce of cocaine had been removed from the pound. The ounce of cocaine was payment for arranging the sale, in accordance with the earlier understanding. The agents arrested Salnajs immediately. At that time the agents did not know the location of the ounce of cocaine that had been removed.

The police who had been watching the agents joined the agents in their car. A decision was made to "secure" the residence to prevent the possible destruction of evidence believed to be located there. None of the police or agents were in uniform. As the police and agents approached the front of the house, an individual was seen looking out a window next to the front door. The individual had pulled the drape which covered the window back just far enough to look out. As soon as the police saw the drape fall, they identified themselves as police and told the persons inside to open the door. Upon receiving no response, the officers kicked in the door.

Four persons were in the livingroom of the house when the police entered. While standing in the livingroom, one agent heard a toilet flush and, fearing that someone was flushing contraband down the toilet, went to the bathroom and found defendant Jenkins standing next to the toilet holding a plastic bag dripping with water. All persons in the house were arrested and taken off the premises. Two police officers remained in the house to "secure" it while a search warrant was sought. Approximately one and one-half hours later one of the agents returned with a warrant to search the house for cocaine and other contraband and the house was searched. Numerous articles were seized.

The defendants moved to suppress all physical evidence found inside the residence. A hearing was held, and the district court granted the motion, finding that there was no probable cause to justify the issuance of the search warrant and that there were no exigent circumstances to justify the

forced entry into the house. We disagree.

## I.

The defendants first seek to suppress the plastic bag which was found in defendant Jenkins' hand at the time of his arrest.

A search without a warrant is presumed to violate the constitutional provisions[3] forbidding unreasonable searches. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *e.g., People v. Casias,* 193 Colo. 66, 563 P.2d 926 (1972). The People have the burden of proving that a warrantless search falls within a recognized exception to the warrant requirements. *E.g., People v. Railey,* 178 Colo. 297, 496 P.2d 1047 (1972).

No search warrant was obtained prior to entry into the residence and seizure of the plastic bag which was found in Jenkins' hand. References to that plastic bag and to the circumstances surrounding its discovery were contained in the affidavit upon which the search warrant for the remainder of the physical evidence was issued. Therefore, it is necessary to decide whether the plastic bag was lawfully discovered (1) to determine whether it must be suppressed and (2) to determine whether information concerning its discovery can be used to support issuance of a search warrant for the other contraband. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); *People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970); *People v. Orf, Jr.,* 172 Colo. 253, 472 P.2d 123 (1970).

When the police decided to enter the residence, the facts recited above gave them probable cause to believe that defendants Sullivan and Williams had participated in the sale of cocaine. This information constituted probable cause to arrest those defendants. *See* section 16-3-102, C.R.S. 1973 (1978 Repl. Vol. 8). The police also had probable cause to believe that Sullivan and Williams were inside the residence.

Absent exigent circumstances, it is necessary to obtain an arrest warrant in order to justify entry into a private home to make an arrest. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 64 L.Ed.2d 639 (1980); *People v. Coto,* 199 Colo. 508, 611 P.2d 969 (1980); *People v. Moreno,* 176 Colo. 488, 491 P.2d 575 (1971).

Here, the urgent need for prompt arrest to prevent escape and possible destruction of contraband is manifest. Salnajs had brought almost a pound of cocaine to the agents and was to receive $30,400 as the purchase price. The officers had probable cause to believe that Salnajs and Sullivan were middlemen; that their compensation was to be one ounce of cocaine; and that the money for the purchase of the cocaine would be paid

---

[3] *U.S. Const.* amend. IV; *Colo. Const.* art. II, § 7.

to someone else. It was reasonable to believe that Salnajs would be expected by his companions to return promptly to the residence with the money. Salnajs' failure to return promptly could be expected to alarm the other participants. In turn, their alarm would likely lead to the removal or destruction of contraband, escape, or retaliation against the agents. Prompt action to arrest Sullivan and Williams was imperative in the course of sound police work. We conclude that exigent circumstances existed to enter the residence to make the arrests. *See United States v. Rubin,* 474 F.2d 262 (3d Cir. 1973);[4] *People v. Barndt,* 199 Colo. 51, 604 P.2d 1173 (1980); *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974); *People v. Duleff,* 183 Colo. 213, 515 P.2d 1239 (1973); *People v. Vaughns,* 175 Colo. 369, 489 P.2d 591 (1971).

Our conclusion is fortified by the fact that the agents had no advance information as to the place where the sale of cocaine would occur. They had no information connecting any of the defendants to 7428 South Teller Street. Under the circumstances, there was no realistic opportunity to seek a search warrant before the exigencies of the matter made it necessary to enter the dwelling.

■ Shortly after the police entered the residence, the sound of the flushing toilet alerted one of the agents that another person was on the premises, and that he might be destroying contraband. Additional investigation was necessary in the interest of protecting the safety of the officers, *see People v. Barndt, supra,* and to prevent destruction of contraband, *see People v. Boorem, supra.* That investigation disclosed defendant Jenkins in the act of attempting to flush the contents of a plastic bag down the toilet. The police action which led to this discovery was consistent with constitutional requirements. *See id.* The plastic bag should not have been suppressed and the information as to the circumstances of its discovery could properly be used in an affidavit to support an application for a warrant to search the premises for cocaine.

## II.

■ The defendants also seek to suppress evidence which was seized as a result of the search pursuant to the search warrant, contending that probable cause did not exist for the issuance of the search warrant. The statements in the affidavit which the issuing judge found to constitute

---

[4] *United States v. Rubin, supra,* involved a warrantless search of a dwelling. The court stated that circumstances relevant to evaluation of a claim of exigency or "emergency" include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of contraband are aware that the police are on their trail, and (5) the ready destructibility of contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic of persons engaged in the narcotics traffic. We utilized these criteria in *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974).

probable cause included (1) information which we held in part I constituted probable cause for the warrantless arrests and (2) the circumstances surrounding discovery of the plastic bag which defendant Jenkins was holding.

Before entering the residence the agents had probable cause to believe that a quantity of cocaine had just arrived there. Although they could not be sure that more than a pound had been received, the time taken between the approval of the sample and the delivery of the agreed quantity could reasonably have suggested a need for weighing and repackaging. There was an ounce unaccounted for and, although it could have been on defendant Salnajs, there was reason for strong suspicion that it was still in the residence. Separation of the ounce would have necessitated weighing, giving rise to the possibility that residue might remain on equipment used for that purpose. The time available to dispose of contraband after the officers' presence became known was very limited. Once inside the residence, the agents discovered Jenkins apparently disposing of a substance by flushing it down the toilet. The substance had been packaged in a plastic bag; the fifteen ounces received by the agents was in a cellophane bag. All this information was set out in the affidavit for search warrant.

■ We have held many times that "probable cause deals with probabilities which are not technical, but are factual and practical considerations of everyday life on which reasonable and prudent men act." *People v. Baird,* 172 Colo. 112, 117, 470 P.2d 20, 24 (1970); *People v. Gonzales,* 156 Colo. 252, 398 P.2d 236 (1965); *see Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). A magistrate may draw reasonable inferences and may utilize his common sense in making a determination of probable cause. *People v. Lindholm,* 197 Colo 270, 591 P.2d 1032 (1979); *see United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We conclude that the information known to the officers and agents and set forth in the affidavit for search warrant was adequate to constitute probable cause that additional cocaine would be found on the premises.

## III.

■ Defendants' final contention is that the search warrant violated the Fourth Amendment as it was overbroad and did not particularly describe the items to be seized.[5] This contention is untenable as this court, in *People v. Schmidt,* 172 Colo. 285, 473 P.2d 698 (1970), upheld a search warrant which contained language very similar to the language in

---

[5] The warrant described the items to be seized to include cocaine and other dangerous drugs and narcotic drugs, vessels, implements, and furniture in which such substances are found, and items tending to establish the identity of the person or persons in control of and occupying the premises. Although probable cause was limited to cocaine, the inclusion of other drugs did not increase the scope of the places to be searched and did not prejudice defendants.

the search warrant in the instant case.

We reverse the ruling of the trial court which suppressed the physical evidence in this case.

JUSTICE DUBOFSKY does not participate.