The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Abel O. GUERIN, Defendant–Appellee.

No. 88SA329.

Supreme Court of Colorado,
En Banc.

Feb. 27, 1989.

---

G.F. Sandstrom, Dist. Atty., Richard W. Dickerson, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Joseph A. Koncilja, Pueblo, for defendant-appellee.

ERICKSON, Justice.

Pursuant to C.A.R. 4.1, the prosecution has appealed from a district court order suppressing three pharmaceutical folds of cocaine and a plastic sandwich bag containing marijuana seized after the defendant's arrest. We affirm.

The defendant, Abel O. Guerin, owned and operated the Tire King at 1331 Abriendo Avenue in Pueblo, Colorado. Detective James Ruggieri was with the Pueblo Police Department Narcotics and Intelligence Unit and had served in that assignment for four years. On February 15, 1988, Ruggieri received a telephone call from an unknown informant who told Ruggieri that he had been at a business known as the Tire King several times within the past eight months between the hours of 6:00 and 9:00 p.m., and that while there he had personally seen the defendant sell both marijuana and cocaine to people who came to the shop. He also said that William Patterson was always present when drug transactions were occurring. The informant alleged that Guerin and those who purchased drugs sat around and drank beer and smoked marijuana. The informant claimed that Guerin usually kept his cocaine in an old pop machine in the second bay of the Tire King, while the marijuana was stored in tires located in the back part of the business.

Detective Ruggieri did not attempt to obtain either an arrest warrant or a search warrant based solely on the uncorroborated information of a first-time unidentified informant who had no track record for providing truthful information. Rather, he decided to conduct a surveilliance of the Tire King to determine if the informant's information was accurate.

Ruggieri testified that on February 16, 1988, at approximately 6:00 p.m., he drove to 1331 Abriendo Avenue and parked his unmarked police car in an alley across from the Tire King. His vehicle was approximately seventy-five feet away from the front of the Tire King which had a window in the front of the building and lights on inside. It was either dark or very close to dark and lightly raining or snowing at the time he commenced his surveillance. Ruggieri had a $15 \times 60$ power spotting scope with a zoom lens to view the premises. He testified that his view into Tire King was essentially unobstructed, although there was some writing in the window indicating the store's business hours. He observed six or eight people inside the Tire King from approximately 6:00 p.m. to 6:25 p.m. He stated he recognized the defendant as one of the people inside from a previous drunk driving arrest during which a small amount of marijuana was found on the defendant's person. Ruggieri also recognized William Patterson, having viewed a photograph of him prior to the surveillance.

Between 6:00 p.m. and 6:25 p.m., Ruggieri saw four different people drive up in motor vehicles, approach the front door, knock and then enter the shop, talk to the defendant, and then leave. Ruggieri testified that these visits lasted approximately two minutes apiece. Four other people walked to the door and engaged in similar conduct, and two of these persons went with the defendant into the back of the shop. No one was denied entry and none of the individuals who came to the door had tires, tools, or anything in their possession indicating legitimate business purposes. During his surveillance, Detective Ruggieri observed the defendant and the other men inside the Tire King were drinking what appeared to be beer. He also saw the men passing around a light colored object which, judging from the manner in which

the men inhaled deeply and then passed it to others, appeared to be a marijuana cigarette. Ruggieri, however, never saw any drugs or money pass between the defendant and any of the eight persons who came to the Tire King that evening.

Since Detective Ruggieri's observations corroborated most of what he had learned from his unidentified caller, he concluded that a crime was being committed inside the Tire King and decided to enter, make an arrest, and secure the premises before obtaining a warrant for the search of the Tire King. He concluded that he was going to enter the Tire King and arrest the defendant for smoking a marijuana cigarette and for trafficking in drugs. He then contacted Officer Samek, two uniformed Pueblo police officers were called, and all four approached the shop on foot at about 6:30 p.m. Ruggieri and Samek drew their weapons, knocked on the locked door, and entered when someone opened it. After gaining entry, the officers immediately smelled burning marijuana. The officers directed the men inside to put their hands up against the wall, whereupon they were frisked for weapons. No weapons were uncovered, but three pharmaceutical folds of cocaine were found in the defendant's right front jacket pocket. Samek noticed the end of a plastic sandwich bag sticking out of a cash box which sat on a desk at which the defendant had been sitting. The desk drawer was half open and Samek, because of his familiarity with the means of packaging marijuana, seized the bag and discovered that it did contain marijuana. Detective Ruggieri left and then returned at approximately 10:00 p.m. with a warrant. Another search was performed of the Tire King, and additional evidence was seized.

The defendant was charged with possession of a schedule II controlled substance, section 18–18–105(2)(a), 8B C.R.S. (1986), and possession of cocaine with intent to distribute, section 18–18–105, 8B C.R.S. (1986). He was also charged with possession of more than one but less than eight ounces of marijuana, section 18–18–106(4)(a)(I), 8B C.R.S. (1986), and possession of marijuana with intent to distribute,

section 18–18–106(8)(b)(I), 8B C.R.S. (1986). After the charges were made, the defendant, through counsel, filed a motion to suppress both the evidence seized at the Tire King and the statements made by the defendant after his arrest.

The trial court, after hearing extensive testimony, agreed with the defendant and suppressed the cocaine and marijuana seized as well as the defendant's statement that he was the owner of the shop. The trial court reasoned that although there was probable cause for an arrest, neither exigent circumstances nor consent were present which would have vitiated the necessity of obtaining a warrant prior to the search of Tire King. Moreover, the trial court concluded that although the police testified that Guerin had been advised of the *Miranda* rights prior to volunteering his statement, no other evidence corroborated the police's testimony. Thus the defendant's statement to the police was held to be inadmissible.

In this interlocutory appeal, the prosecution challenges only the trial court's finding that exigent circumstances did not exist. Thus we do not address the trial court's decision regarding whether the defendant, by opening the door when the police knocked, consented to the search or whether the defendant was given his *Miranda* rights. We focus solely upon the exigent circumstances arguments.

A warrantless search is presumptively violative of the fourth amendment, U.S. Const. amend. IV, unless it falls within one of the recognized exceptions to the search warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *People v. Thiret,* 685 P.2d 193 (Colo.1984). Among the recognized exceptions is the exigent circumstances exception, which allows the police to conduct a search without first obtaining a warrant if circumstances creating an emergency so require. *See McCall v. People,* 623 P.2d 397 (Colo.1981). In *People v. Boorem,* 184 Colo. 233, 519 P.2d 939 (1974), we stated that the following factors must be considered when determining whether exigent circumstances exist:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*Id.* at 237, 519 P.2d at 941.

It was the trial court's prerogative to determine from the evidence whether the prosecution proved that exigent circumstances existed. *People v. Hogan,* 649 P.2d 326 (Colo.1982). Here, the trial court found that under the totality of the circumstances the police were not confronted with an emergency. The record supports the trial court's finding. It is undisputed that the police suspected Guerin's actions of February 16, 1988, to be part of a continuing pattern of drug selling. Thus there was little likelihood that Guerin's activity that night would not be repeated at a later date. Moreover, the informant who telephoned Detective Ruggieri told him that the drug transactions occurred between 6:00 p.m. and 9:00 p.m. The record reflects that the officers entered Tire King at 6:30 p.m. It is possible that the officers could have maintained their surveillance of the shop and obtained a warrant before the illegal transactions stopped for the night.

There is little evidence that the police feared that the contraband was about to be removed from the shop. As the informant told Ruggieri, Tire King was the depository from which the drugs were distributed. The drugs were kept in the shop's pop machine and in its supply of tires. There was no indication that Guerin was going to remove the contraband. In fact, judging by the steady stream of customers walking into the shop, it would be reasonable to assume that Guerin was unaware of the police surveillance and had no intention of moving his profitable operation from the shop.

It is uncontroverted that the police were in no danger while surveilling the Tire King. Moreover, there was no evidence that the defendant or the others inside the shop had any idea that they were under surveillance. Any such argument would be disposed of by pointing out that the defendant or someone else in the shop opened the door to the shop when the police knocked. A person who thought that the police were on his trail probably would not do so. Finally, while cocaine can be easily disposed of by flushing it down a drain, marijuana is not as easily destroyed. Marijuana, in the quantities which would allow the defendant to sell it to a substantial number of persons is much more difficult to destroy. Similarly, because the cocaine was allegedly kept in the pop machine and marijuana in the tires, it would take the defendant a certain amount of time to gather them before attempting to destroy them. In our view, the time that the defendant had between the point he might have become aware he was under police surveillance and the point police could have entered the shop was not sufficient to permit him to dispose of the drugs. As such, there was little danger that the incriminating evidence would have been destroyed had the police waited until a search warrant was issued.

Given the state of the record before us, we cannot say that the trial court's conclusion that exigent circumstances were not present is unreasonable. We find no error in the trial court's ruling that the warrantless entry into the defendant's shop violated the fourth amendment. Accordingly, we affirm the trial court's order suppressing the evidence seized during the illegal search.

VOLLACK, J., dissents and ROVIRA, J., joins in the dissent.

VOLLACK, Justice, dissenting:

The majority concludes that in the absence of exigent circumstances the police were not justified in entering the Tire King without a warrant and seizing three bindles

of cocaine and a baggie of marijuana. In doing so, it extends the exigent circumstances exception developed in *People v. Boorem*, 184 Colo. 233, 519 P.2d 939 (1974), to business premises without discussing whether persons enjoy the same reasonable expectation of privacy at work as they do at home. I believe that the prosecution has carried its heavy burden of demonstrating exigent circumstances under the *Boorem* test, and conclude from the additional consideration of reduced expectation of privacy attending a business premises that the trial court erred in suppressing the cocaine and marijuana. Accordingly, I dissent.

## I.

### A.

Reasonable expectations of privacy are especially strong in a home. *Michigan v. Clifford*, 464 U.S. 287, 296–97, 104 S.Ct. 641, 648–49, 78 L.Ed.2d 477 (1984) (plurality opinion); *Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980); *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972); *People v. Jansen*, 713 P.2d 907, 911 (Colo. 1986); *People v. Bustam*, 641 P.2d 968, 972 (Colo.1982). Because protection of the home lies at the very heart of the fourth amendment, nonconsensual entry of private residences by the police is permitted only when the prosecution establishes both probable cause to search and exigent circumstances to justify the unauthorized entry. *Jansen*, 713 P.2d at 911; *People v. Turner*, 660 P.2d 1284, 1287 (Colo.1983); *see also Payton*, 445 U.S. at 589, 100 S.Ct. at 1381 (reasonable expectation of privacy is most clearly defined by the physical dimensions of person's home); *United States v. Ladson*, 774 F.2d 436 (11th Cir.1985).

While business premises are protected by the fourth amendment, a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 353, 97 S.Ct. 619, 629, 50 L.Ed.2d 530 (1977). The relevant question in the context of an entry into the home or business is the individual's expectation of privacy. *United States v. Driver*, 776 F.2d 807, 809 (9th Cir.1985). "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).

Thus, the Ninth Circuit permitted a warrantless search of business premises during business hours without regard to presence of exigent circumstances, *see United States v. Blalock*, 578 F.2d 245, 247 (9th Cir.1978), but found no exigent circumstances present in the nonconsensual search after business hours of a private office on the second floor of a warehouse that was "not in an area exposed or visible to the public, but in an area of the warehouse with a reasonable expectation of privacy." *Driver*, 776 F.2d at 810. In *United States v. Ponce*, 488 F.Supp. 226 (S.D.N.Y. 1980) (decided after *Payton*), the district court found exigent circumstances present in the nonconsensual arrest on business premises in part because of the likelihood of removal or destruction of stolen merchandise and in part because of the diminished expectation of privacy a person may reasonably hold in a business premises. *See also Mowrer v. State*, 447 N.E.2d 1129, 1132 (Ind.App.1983); *People v. Castillo*, 106 Misc.2d 949, 951–52, 436 N.Y.S.2d 699, 701 (1981).

While I do not believe that the presence of exigent circumstances turns solely on the character of the premises to be searched, the fact that the Tire King was a business property is one factor to consider in the totality of circumstances surrounding the reasonableness of the entry in this case.

### B.

The majority concluded and I agree that there was probable cause for the arrest of the defendant at the Tire King. The question that remains, however, is whether there were exigent circumstances in addition to probable cause to justify the warrantless entry by the police. *Bustam*, 641

P.2d at 972; *Payton,* 445 U.S. at 590, 100 S.Ct. at 1382; *People v. Williams,* 200 Colo. 187, 191, 613 P.2d 879, 882 (1980). In my view, the district court erred in concluding that exigent circumstances were not present.

The district court correctly noted that the threat of immediate removal or destruction of evidence is an exigent circumstance justifying a warrantless search. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976); *People v. Garcia,* 752 P.2d 570, 581 (Colo.1988); *People v. Turner,* 660 P.2d 1284, 1287 (Colo.1983); *People v. Gomez,* 632 P.2d 586, 592 (Colo.1981); *McCall v. People,* 623 P.2d 397, 402 (Colo.1981). In order to rely on the threat of immediate removal or destruction of evidence to justify a warrantless search, the police must have "an articulable basis" to justify such a belief. *Garcia,* 752 P.2d at 581. The district court also properly stated the standard for demonstrating an articulable basis to believe evidence is about to be removed or destroyed. "The question is whether there is a real or substantial likelihood that the contraband or known evidence on the premises might be removed or destroyed before a warrant could be obtained." *Turner,* 660 P.2d at 1288.

The district court did not rely on the factors described in the *Boorem* test to determine whether exigent circumstances were present to justify a warrantless search. Instead, it stated that the only evidence to support such a claim "is that there were people coming and going from the [Tire King] who presumably were trafficking in drugs," which it concluded was not a sufficient demonstration of an emergency to justify an immediate entry without a warrant.

A proper weighing of the factors in the *Boorem* test leads me to conclude that exigent circumstances were present in this case. The *Boorem* test includes the following factors:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*Boorem,* 184 Colo. at 237, 519 P.2d at 941 (quoting *United States v. Rubin,* 474 F.2d 262 (3rd Cir.1973).

First, the degree of urgency involved and the amount of time necessary to obtain a warrant favor a finding of exigent circumstances. Officer Ruggieri testified that he believed that it would take a few hours to secure a search warrant, and that in such time the defendant, his business partner, and the others would have left the Tire King. That it actually took Officer Ruggieri more than three hours to obtain a search warrant and return to the Tire King confirms the reasonableness of that belief. Second, the belief that the contraband was about to be removed was reasonable and favors a finding of exigent circumstances. From his experience as a drug enforcement officer, Ruggieri recognized that four times in twenty-five minutes, drug transactions were taking place that depleted the supply of drugs at the Tire King. The police had no knowledge of the size of the defendant's drug supply at the Tire King and thus could not know whether the supply on the premises would be wholly depleted or barely affected in the time it would take to secure a warrant. The third and fourth factors admittedly disfavor a finding of exigent circumstances. Nothing indicates that the police were in danger while guarding the Tire King site or that the possessors of the contraband were aware that the police were on their trail. The ready destructibility of cocaine and marijuana, however, favors a finding of exigent circumstances.

### C.

The best solution to the problem of defining a workable but fair warrantless entry

standard may be to distinguish the truly "planned arrest" from the arrest made in the course of an ongoing investigation in the field. W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.1(f), at 600 (1987). A "planned" arrest is made after a criminal investigation has been fully completed at another location and the police make a deliberate decision to go to the arrestee's home or some other premises where he is believed to be in order to take him into custody. Courts should be reluctant to accept police claims of exigent circumstances in these situations because whatever exigencies arose after the police decided to go to the certain location were foreseeable at a time when a warrant could have been obtained. *Id.* at 601. On the other hand, when the occasion for arrest arises while the police are already out in the field investigating the conduct which is the basis for the arrest,

> there should be a far greater reluctance to fault the police for not having an arrest warrant. Here, the presumption should be in favor of a warrantless arrest rather than against it, as the probabilities are high that it is not feasible for the police to delay the arrest while one of their number leaves the area, finds a magistrate and obtains a warrant, and then returns with it.

*Id.* at 601–02. Such an analysis in my view should be considered in the totality of circumstances surrounding the entry in this case.

## II.

As we noted in *Boorem*, "emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized." 184 Colo. at 237, 519 P.2d at 941 (quoting *United States v. Rubin*, 474 F.2d 262 (3rd Cir. 1973)); *see also Osabutey v. Welch*, 857 F.2d 220, 224 (4th Cir.1988). In this case, the balance of factors weighs in favor of exigent circumstances justifying the nonconsensual entry of the Tire King by the police without a warrant but with probable cause. By considering the diminished expectation of privacy attending business premises, the degree of urgency involved and the time necessary to procure a warrant, the reasonable belief that the contraband was about to be removed, the ready destructibility of the contraband, and the fact that this was not a "planned" arrest but one that arose in the field, I would conclude that exigent circumstances were present. Because in my view there were exigent circumstances coupled with probable cause to arrest, the police were justified in entering the Tire King. The seizure of three bindles of cocaine in the defendant's jacket pocket would then be justified as a search incident to a lawful arrest, and the seizure of a baggie of marijuana would be justified under the plain view exception to the warrant requirement.

As a final factor which neither the district court nor the majority noted, I would consider that the police did not search the premises once they entered the Tire King, but simply looked around the back bays of the garage to be sure no one was hiding. Once the police secured the premises, they released the persons in the Tire King other than the defendant and waited for Officer Ruggieri to return with a search warrant. Given the limited intrusion by the police, I would conclude that the police conduct was reasonable under the circumstances.

Police need not stand idly by waiting for a warrant to arrive while evidence of crime is removed or destroyed. *United States v. Evans*, 629 F.Supp. 1544, 1551 (D.Conn. 1986); *see also United States v. Vasquez*, 638 F.2d 507, 529–32 (2nd Cir.1980); *United States v. Rubin*, 474 F.2d 262, 268 (3rd Cir.1973). The facts demonstrate a real or substantial likelihood that the contraband on the premises might be removed before a warrant could be obtained. The exigent circumstances exception to the warrant requirement therefore applies, and the district court should not have suppressed the cocaine and marijuana. I would reverse the order of the district court.

I am authorized to say that Justice RO-VIRA joins in this dissent.