**PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Rick L. MILLER, Defendant–Appellee.**

**No. 88SA472.**

Supreme Court of Colorado, En Banc.

May 1, 1989.

Donald E. Mielke, Dist. Atty., Donna Skinner Reed, Sr. Deputy Dist. Atty., Golden, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Nancy Holton, Deputy State Public Defender, Golden, for defendant-appellee.

VOLLACK, Justice.

The prosecution brings this interlocutory appeal from the Jefferson County District Court order suppressing evidence seized pursuant to a warrantless arrest of the defendant. A statement made by the de-

fendant at the time of his arrest was also suppressed. We conclude that the district court correctly held that exigent circumstances did not exist in this case and we affirm the suppression order.

## I.

In the early morning hours on July 26, 1988, the Jefferson County Sheriff's Department received a report of a sexual assault that had occurred between 11:00 P.M. and 2:00 A.M. Sheriffs were dispatched to the victim's home at 2:25 A.M. Based on the victim's description of the apartment and its location, deputies determined that the assault had taken place at an "Apartment 12" in one of the buildings in the Caesar's Square Apartment complex. When they realized that this apartment complex was located in the jurisdiction of the Wheatridge Police Department, the Jefferson County Sheriff deputies contacted and met with two Wheatridge police officers.

Deputy Sheriff Warner was the first to contact the fourteen-year-old victim, C.P. C.P. told Deputy Warner that her assailant was a dark-skinned male about 5'9" tall, 140 pounds, with brown eyes, a scar over his right eyebrow, and short, curly, brown hair. She thought his name was "Ricky" because while she was in his apartment she saw what looked like a check with that name written on it.

C.P. explained to the officers that she met her assailant underneath the viaduct at I–70 and Garrison; he and another man were sitting under the viaduct drinking alcoholic beverages. When he offered to help her get a job by introducing her to the manager of the nearby Denny's restaurant, she obtained permission from her mother to go to Denny's and began walking with the defendant along 48th Avenue. While walking to Denny's, the man suggested that C.P. accompany him to his apartment to get matches. While in his apartment, he forced her onto a mattress and sexually assaulted her. When she struggled, he displayed a knife and verbally threatened her. He kept the knife in his hand, threatened to use guns if she did not cooperate, and committed "several sexual assaults" on C.P.

The victim did not know the exact address of the building within the apartment complex, but was able to identify it as the westernmost building within the complex, and was able to describe the entrance and the apartment number. Deputies Warner and West and Lieutenants Girk and Carmosino went to the apartment complex. The five buildings in the complex are numbered 9235, 9265, 9295, 9325, and 9355 West 48th Avenue. C.P. had described the apartment as having an "in-door" type of entrance from a hallway, so the officers eliminated buildings 9235 and 9265, which were "courtyard" apartments that only had outdoor access.

Having narrowed their search to the other three buildings, the officers went to buildings 9325 and 9295.[1] One building did not have an apartment 12. The occupant of apartment 12 in the other building was an adult male who spoke with the officers. He was a "chunky," "somewhat short" white male who provided identification and did not resemble C.P.'s description of her assailant, and the officers concluded that he was not the suspect.

The four officers then went to Apartment 12 at 9355 West 48th and spent "three or four minutes standing there knocking, [and] yelling for Rick." Two officers knocked on the door, one stayed outside the building to watch the window, and the fourth stood in the hallway a number of feet from the door of the apartment. When they received no response, Officer Carmosino tried the doorknob, found it unlocked, and opened the door. The officers entered the apartment, saw a mattress in

1. There was no dispute that "Rick" was located in building 9355, but there was conflicting testimony regarding buildings 9295 and 9325. Officer Girk testified that the apartment numbers in building 9295 were 100 and 200 series, and the adult male they contacted was in building 9325. Deputy Sheriff West gave the same testimony. Officer Carmosino and Deputy Sheriff Warner both testified that the adult male they contacted and eliminated as a suspect was in apartment 12 at building 9295, and that building 9325 had 100 and 200 series numbers.

the bedroom, and found a nude white male lying asleep on the mattress. This man matched C.P.'s description of her assailant, and he identified himself to the officers as Rick Miller. The officers who entered the apartment had to shake the suspect to awaken him. Deputy West saw a check made out to "Rick" on the kitchen counter in the apartment, consistent with the victim's description. Officer Carmosino found a very large knife the victim had described, blue jeans with tire chains for a belt, and a short-sleeved shirt.

Officer Carmosino advised Miller of his *Miranda* rights and Miller conceded that he had had a "girl" in his room earlier in the evening but said that they had engaged in consensual intercourse. Miller was arrested and the officers seized as evidence sheets found rolled up in the hallway, a pair of shoes, a baseball cap, and a personal check. Officers obtained a search warrant. The next morning they returned to the apartment with C.P., had her confirm that it was the location where her assault had taken place, and executed the search warrant.[2] Miller was charged by information with first degree sexual assault,[3] sexual assault on a child,[4] and three counts of violent crime.[5]

The defendant filed a Motion to Suppress Evidence and Statements. He asked for suppression of "any and all statements elicited from Defendant by law enforcement officers on the date of and subsequent to Defendant's arrest" and suppression of "any and all physical evidence seized from the person or presence of the Defendant,

including but not limited to items found within his residence."

A hearing on the suppression motion was held in December 1988 and the trial court ordered suppression of the items seized in the first, warrantless search and the statement made by Miller at the time of his arrest. The state filed this interlocutory appeal from the trial court's suppression order, arguing that exigent circumstances existed to justify the warrantless entry and arrest.[6]

## II.

### A.

At the suppression hearing the officers were asked why they felt that a warrantless entry was justified. In response, Officer Girk testified:

We were concerned about the fact that this individual indicated to the victim that he was armed, he had made life-threatening gestures to her—toward the victim—with a knife. And I was concerned about the fact that he knew where the victim lived. And he had also indicated to her for her not to report this incident to the police.

Deputy Warner testified:

Well, what the victim had related to me that indicated that Ricky was a violent person. I mean, here he was punching out a guy for just saying something under the viaduct.[7] He told her that he likes to fight. And then he—she said that he used a knife ... to force her to have sexual intercourse, and that she thought he had a gun, also, in the house.

---

2. The physical evidence seized pursuant to the search warrant included the defendant's hat, check, a butcher knife, sheets, bedspread, Public Service bill, apartment lease, bank statement, water bottle, Bible, bra, underwear, white shirt, socks, tee shirt, check book filler, wallet, earring, and photographs. This evidence was held to be admissible.

3. § 18–3–402, 8B C.R.S. (1986).

4. § 18–3–405, 8B C.R.S. (1986).

5. § 16–11–309, 8A C.R.S. (1986).

6. In the opening brief, the People ask us to find that the evidence at issue should be admitted under the inevitable discovery rule. This argu-

ment was presented at the December 12, 1988 hearing, but the trial court never ruled on the issue, and the prosecution did not request such a ruling. In the absence of a trial court ruling in this regard, we decline to address the issue on appeal. *See Kirkendoll v. People,* 138 Colo. 267, 269, 331 P.2d 809, 810 (1958) (issues not "raised and determined by the trial court" will not be addressed on appeal).

7. Apparently the defendant and his companion were involved in an altercation when they were drinking together under the viaduct on the night of C.P.'s assault.

That makes it a high risk—high-risk suspect that you would be looking for. And you want to make sure you cover yourself and you have all avenues of escape covered.

Deputy West testified:

Well, the victim, being a juvenile and 13 years old was—was terrified. She described this knife and these guns in this apartment. And I felt, with the violence of this crime that just occurred and the possibility of something else happening that evening, that now was the time.

We had a good description of the suspect, good knowledge of where the suspect was. Everybody agreed that we needed to see if we could get ahold of him right now.

When asked why he decided to enter the apartment when there was no response to the knocking on the door, Officer Carmosino testified:

One, I was hearing noises inside the apartment building; two, I felt that there might be a chance of a person escaping through a rear door as there was a glass sliding door there, and it has a balcony. I was afraid that the individual might escape or flee from that apartment. And, also, felt that maybe evidence might be destroyed, also.

The trial court issued the following verbal order, granting in part the motion to suppress.

Regarding a warrantless entry and arrest the case law within the State of Colorado is clear that there must be both probable cause and exigent circumstances before you can enter a person's home and effect an arrest without a warrant.

Now, with regard to probable cause, there certainly was at the time the officer entered probable cause that a crime had been committed and probable cause that a crime had been committed in that particular apartment.

However, as far as this Court's concerned there was no probable cause to believe that it had been committed by this particular individual and that the probable cause to believe that it was

committed by Mr. Miller was not determined until after they opened the door of the apartment, went in and determined that this particular individual's name was Rick.

. . . .

As it relates to exigent circumstances, the Court would make the following additional findings: There was no evidence that this defendant was about to flee.

He was not in the process of fleeing. There was no testimony ... that suspects in sexual assault cases routinely destroy evidence when they know the police are coming.

Officer Girk clearly in his own mind did not feel any compelling need to go into that apartment when, after knocking at the door, he stated let's go. The evidence is that the police were told that when the victim left the individual was sleeping. In fact, he was sleeping when they opened the door.

. . . .

There was no testimony in this case that there was not—that the duty judge for some reason was not available. The Court would accept that it could take two to three hours to get a warrant. The Court would also note that at the time that they were entering this apartment there was no police officer somewhere else in the process of preparing or getting an affidavit.

There was no articulated reason in the record to support any belief of the officers that he might flee.

The court reviewed the factors for assessing exigent circumstances described in *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970), as well as the holding in *People v. Santisteven*, 693 P.2d 1008 (Colo. App.1984), *cert. denied*, (Colo. Dec. 10, 1984). The trial court concluded that the items seized in the first, warrantless search must be suppressed, as well as Miller's statement to the police. As to the second search, executed with a search warrant, the court found that there was an independent source for the probable cause—the victim's statements—therefore the evidence ob-

tained in the second search was held to be admissible.

## B.

■ "When police seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists." *United States v. Aquino,* 836 F.2d 1268, 1271 (10th Cir.1988) (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)); *see Welsh v. Wisconsin,* 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097–98, 80 L.Ed.2d 732 (1984). *Dorman* describes the heavy burden on the police to prove that there was a need "that could not brook the delay incident to obtaining a warrant." *Dorman,* 435 F.2d at 392. The six pertinent considerations outlined in *Dorman* are that (1) a grave offense is involved, particularly a crime of violence; (2) the suspect is reasonably believed to be armed; (3) there exists a clear showing of probable cause to believe that the suspect committed the crime; (4) there is a strong reason to believe that the suspect is in the premises being entered; (5) the likelihood exists that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably. *Id.* at 392–93. One additional factor is whether the warrantless entry is made at night. *Id.* at 393.

■ Once the defendant has presented evidence that he was arrested without a warrant, the burden shifts to the prosecution. *People v. Jansen,* 713 P.2d 907, 911 (Colo.1986). The prosecution must prove two things: that there was probable cause to search, and that exigent circumstances existed to justify the unauthorized entry. *Id.* These two requirements are determined by evaluating the facts known at the time of the warrantless entry and search. *Id.*

There are three general categories of exigent circumstances. *People v. Santisteven,* 693 P.2d 1008 (Colo.App.1984). One, exigent circumstances may exist "when

there is a bona fide pursuit of a fleeing suspect." *Id.* at 1012.[8] Two, an exigent circumstance is presented if there is a risk of immediate destruction of evidence. *People v. Garcia,* 752 P.2d 570, 581 (Colo. 1988); *Santisteven,* 693 P.2d at 1012. The third type of exigent circumstance involves a "colorable claim of emergency threatening the life or safety of another." *People v. Clements,* 661 P.2d 267, 271 (Colo.1983); *Santisteven,* 693 P.2d at 1013. If there is doubt as to whether officers have reasonably concluded that a warrantless search was justified, "such doubt must be resolved in favor of the defendant whose property was searched." *Jansen,* 713 P.2d at 912. "In the absence of evidence substantiating the officer's fear of danger or destruction of evidence, a warrantless search of the premises is illegal." *Id.* at 911–12.

■ The court here found that there were no exigent circumstances to support the warrantless entry of Miller's apartment. In applying the *Dorman* factors, the trial court found that (1) this was a grave offense and crime of violence; (2) the suspect was believed to be armed; (3) there was probable cause to believe that the crime had been committed in the apartment although it was not clear "that they knew the identity of the particular individual who committed the crime;" (4) there was a strong reason to believe that the suspect was in Apartment 12; (5) there was "not one iota of evidence to indicate that [Miller] was escaping or in the process of fleeing" and "no evidence to indicate that the suspect was aware that the police were on his trail;" (6) the entry was made peaceably; and (7) it was not impractical for the officers to obtain a warrant.

Based on these findings, the judge found that there was no evidence to support the assertion that Miller was in the process of fleeing. C.P.'s statement to police officers was that her assailant was sleeping when she left his apartment. Law enforcement

8. In 1988 the Tenth Circuit Court of Appeals noted that the "only case in which the Supreme Court has held the exigent circumstance exception sufficient to justify warrantless entry into a suspect's home involved the hot pursuit of a fleeing felon whom the police could have lawfully arrested without a warrant." *Aquino,* 836 F.2d at 1271 (citing *United States v. Santana,* 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409–10, 49 L.Ed.2d 300 (1976)).

officers testified that two of them watched the doors and windows to ensure that Miller did not escape while the other two officers knocked on the door. There was no evidence that contraband or other evidence was in danger of being destroyed. There was no allegation that anyone was presently being endangered by Miller. The trial court took judicial notice of the fact that a judge was on duty so a search warrant could have been obtained in approximately two or three hours. While the officers' concern for the safety of the victim was commendable, it is clear from the testimony that Miller's apartment could have been placed under surveillance long enough to obtain a warrant for his arrest. "The threat of immediate destruction or removal of evidence constitutes an exigent circumstance *if the prosecution can demonstrate* that the police had *an articulable basis to justify a reasonable belief that evidence was about to be removed or destroyed.*" *Garcia*, 752 P.2d at 581 (emphasis added). That was not the case here.

Based on these facts, we conclude that the trial court correctly found that the prosecution had not met its burden of establishing the existence of exigent circumstances. Because there was no justification for the warrantless entry of Miller's apartment, we affirm the suppression order entered by the district court.

QUINN, C.J., dissents.

ROVIRA and MULLARKEY, JJ., join in the dissent.

QUINN, Chief Justice, dissenting:

I respectfully dissent from the judgment affirming the order of suppression. While a reviewing court should accept a trial court's findings of historical fact if supported by competent evidence, it also should not hesitate to correct an ultimate constitutional conclusion that is inconsistent with or unsupported by the undisputed historical facts. *People v. Quezada*, 731 P.2d 730 (Colo.1987). In my opinion, the undisputed historical facts in this case add up to exigent circumstances as a matter of law.

A sexual assault on a thirteen-year-old girl was committed sometime between 11:00 p.m. and 2:00 a.m. and was reported to the police in the early morning hours of July 26, 1988. Several officers went to the apartment complex where the assault had occurred for the purpose of taking the offender into custody. Although the officers did not know the suspect's name or his precise address, they were able to locate his apartment by a process of elimination. Realizing that it would take two to three hours before an arrest warrant could be obtained, the officers entered the apartment, took the defendant into custody, and seized items directly connected to the sexual assault.

The Fourth Amendment to the United States Constitution generally prohibits police officers from entering a home in order to make a warrantless arrest. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The Fourth Amendment, however, does not prevent police officers from entering a home in the face of compelling or exigent circumstances justifying the warrantless entry. *See, e.g., Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *McCall v. People*, 623 P.2d 397 (Colo.1981). Exigent circumstances justifying a warrantless entry into a home include those situations where a delay might endanger the police officers or other persons, might result in the flight of the suspect, or might risk the destruction of crucial evidence. *See generally People v. Thompson*, 770 P.2d 1282 (Colo.1989); *People v. Bustam*, 641 P.2d 968 (Colo.1982). The determination that a warrantless entry is justified under the exigent circumstances doctrine must be based on a consideration of the totality of the circumstances confronting the police officers at the time the warrantless entry is made. No one factor, in other words, is conclusive of the issue. *See United States v. Rubin*, 474 F.2d 262 (3d Cir.1973), *cert. denied sub nom. Agran v. United States*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Dorman v. United States*, 435 F.2d 385 (D.C.Cir.1970); *People v. Williams*, 200 Colo. 187, 613 P.2d 879 (1980).

In this case, although the police officers were not engaged in an eyeball chase of the suspect, they nonetheless were close on the trail of a person who had recently

committed a sexual assault with a knife, who might be armed with a gun, and who might well constitute a danger to the arresting officers or to others. In the course of their pursuit, the officers had determined the location of the crime by eliminating other possible locations in the apartment complex. Upon arriving at the defendant's apartment, they had probable cause to believe that the person who committed the sexual assault was inside.

The justification for the entry into the defendant's apartment was clearly established at the suppression hearing. Some officers were concerned about the defendant's escape, while others were concerned about the possible destruction of evidence inside the apartment. These concerns were not illusory. The defendant would likely have been alerted to the presence of the police officers as a result of the extended knocking on his apartment door at three o'clock in the morning. Moreover, it was not implausible that if the officers waited outside the apartment for a warrant, the defendant might attempt to escape, thereby endangering the officers or others, or might attempt to dispose of critical evidence during the delay. In short, the circumstances confronting the officers at the time of their entry were sufficiently compelling to justify the action taken.

Since, in my view, the entry into the apartment was constitutionally permissible, I have no hesitation in concluding that the defendant's custodial statement, given after proper *Miranda* warnings, was not the fruit of any Fourth Amendment violation. I am also satisfied that the warrantless seizure of the check, the bedsheet rolled up on the floor, the large kitchen knife, as well as several items of clothing, was constitutionally justified as the fruit of a valid search incident to the defendant's arrest.

I would reverse the order of suppression.

I am authorized to say that Justice ROVIRA and Justice MULLARKEY join in this dissent.